**UNITED STATES of America,**

v.

**Rawle Emerson HINDS, Defendant.**

**No. CR–91–296C.**

United States District Court,
W.D. New York.

May 5, 1992.

**24**

Dennis C. Vacco, U.S. Atty. (Deborah N. Sorbini, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for U.S.

Robshaw & Associates, P.C. (Thomas E. Webb., Jr., of counsel), Buffalo, N.Y., for defendant.

CURTIN, District Judge.

Defendant Rawle Emerson Hinds is charged in a superseding indictment with violating the provisions of 8 U.S.C. § 1326, which makes it a crime to enter, attempt to enter, or be found in the United States within five years of a prior deportation without the consent of the United States Attorney General. More specifically, the statute provides:

Any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States ...

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years,

or by a fine of not more than $1,000, or both.

8 U.S.C. § 1326.

In the instant case, Mr. Hinds cites to *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) and asserts that his indictment must be dismissed on the grounds that his deportation proceedings were fundamentally unfair and a violation of due process. Defense counsel has filed a motion to suppress the evidence of the deportation order, the government has responded, and the court has heard oral argument. The government, defendant, and his counsel have had the opportunity to listen to the tape recording of defendant's deportation hearing and have reviewed the transcript. All agree that the transcript is accurate as submitted, although some parts of the tape are unintelligible.

In short, the defense contends that defendant's due process rights at the deportation proceeding were violated by depriving defendant of his alleged absolute right to counsel, 8 U.S.C. § 1362, 8 C.F.R. § 242.16. As a result, defendant argues that he neither understood the ramifications of the deportation hearing nor the right to appeal from the deportation order. The government maintains that defendant's due process rights were protected, affording him a fair deportation hearing, and that the lack of counsel at the hearing did not amount to a Fifth Amendment violation. Also at issue is the threshold question of whether or not the district court need review the validity of defendant's underlying deportation order.

In *United States v. Spector*, 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863 (1952), the United States Supreme Court left open the question of whether the validity of an underlying order of deportation may be challenged in a criminal prosecution in which the prior deportation is an element of the crime. Those courts of appeal addressing the question in the context of a criminal prosecution post-*Spector* were divided as to whether collateral attacks were permissible. *United States v. Petrella*, 707 F.2d 64 (2d Cir.), *cert. denied*, 464 U.S. 921, 104

S.Ct. 289, 78 L.Ed.2d 265 (1983). Finally, in 1987, the Supreme Court revisited the collateral attack issue to resolve the conflict among the circuits. *United States v. Mendoza–Lopez*, 481 U.S. 828, 833 n. 6, 107 S.Ct. 2148, 2152 n. 6, 95 L.Ed.2d 772 (1987). The Court, in *Mendoza–Lopez*, explained that the text, legislative history, and background of § 1326 indicate that Congress did not intend the validity of an underlying deportation order to be contestable in a § 1326 prosecution. However, the Court held that due process requires that a collateral challenge to the use of a deportation proceeding as an element of a criminal offense be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review. *Mendoza–Lopez*, 481 U.S. at 837–42, 107 S.Ct. at 2154–57.

The *Mendoza–Lopez* Court reasoned that past cases established "that there must be *some* meaningful review of the administrative proceeding" when it is to play a critical role in a subsequent criminal proceeding. The Court stressed that this principle means that where the defects in an administrative proceeding foreclose its judicial review, then an alternative means of obtaining judicial review must be made available. *Id.* at 837–38, 107 S.Ct. at 2155. The Court explained that:

> [d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Mendoza–Lopez*, 481 U.S. at 839, 107 S.Ct. at 2155.

Unfortunately, the *Mendoza–Lopez* Court has declined to enumerate which procedural errors are so fundamental so as to effectively deprive the alien of judicial review. The Court merely noted that while administrative procedures are less stringent than those demanded in a criminal trial, analogous abuses in criminal settings could operate to deny effective judicial review of administrative determinations. *Id.* at 839 n. 17, 107 S.Ct. at 2155 n. 17.

In *Mendoza–Lopez*, the district court dismissed the indictments upon its determination that the defendants were denied a fundamentally fair deportation proceeding. The court's determination, in turn, was based on a finding that the Immigration Judge inadequately informed the aliens of their right to counsel at the hearing, accepted their unknowing waivers of the right to apply for relief from the deportation, and inadequately informed them of their right to appeal the deportation orders. While the government never conceded that the deportation hearings were fundamentally unfair, it never raised the issue of fundamental fairness for review by the Supreme Court. Instead, the government only argued that collateral attacks were never proper in § 1326 prosecutions. *Mendoza–Lopez*, 481 U.S. 828, 846 nn. * & 1, 107 S.Ct. 2148, 2159 nn. * & 1 (*compare* Majority Opinion *with* Rehnquist, C.J., White, J., and O'Connor, J. dissenting, and Scalia, J. dissenting separately). Thus, it appears that the Supreme Court, in only addressing the issue of whether collateral attacks were ever proper, began its analysis on the premise that fundamental unfairness marked the aliens' deportation proceedings.

A very different situation exists in the instant case. The government maintains that Mr. Hinds received a fundamentally fair deportation hearing. While *Mendoza–Lopez* instructs that a collateral attack is permitted when a deportation hearing is alleged to be violative of due process, the Supreme Court was silent as to what procedures a district court need follow to ensure that such fairness existed. For instance, it is not at all clear whether district court review of a non-appealed deportation order should occur each time the government brings a § 1326 prosecution, or whether the district court's alternative review need occur only upon the defendant's raising the fundamental fairness allegation.

In fact, the degree of district court review of an underlying deportation proceeding is equally unsettled. *See Petrella*, 707

F.2d at 65–66 (discussing varying degrees of trial court review). Thus, it appears that the inquiry of the trial court should depend on the nature of the allegation presented. In this case, Mr. Hinds claims that he was prejudiced as a result of a violation of his right to counsel and the unintelligent waiver of his right to appeal. Thus, the district court must inquire into (1) whether Mr. Hinds was entitled to counsel; (2) whether Mr. Hinds exercised considered or intelligent judgment when waiving his right to appeal the deportation determination; and (3) whether Mr. Hinds was prejudiced as a result.

The record establishes that Mr. Hinds was convicted, on December 29, 1988, in a Florida state court for the sale and delivery of marijuana, for which he received a two-year jail sentence. The INS thereafter commenced a deportation proceeding by reason of defendant's conviction. On June 30, 1989, while defendant was in INS custody, a deportation hearing convened before Immigration Judge John Duck, who adjourned the hearing to enable defendant to obtain counsel. On the same date, a separate bond hearing resulted in the defendant's continued detention under a $15,-000.00 INS delivery bond. The deportation hearing reconvened on July 10, 1989, only to be adjourned a second time to enable defendant to seek representation. The hearing again reconvened on July 17, 1989, at which time defendant appeared without counsel but stated, on the record, that he was willing to proceed without representation. During the hearing, the judge advised defendant of his right to an attorney at no expense to the government, and on matters of evidence and cross-examination. The defendant indicated an understanding of the nature of the court and his right to an attorney. Defendant acknowledged receipt of the "I–618 Legal Aid sheets," which provide a list of attorneys available for his defense at no cost to the government. Item 16, Ex. A.

■ Contrary to defendant's blanket characterization of his right to counsel as "absolute," there are a number of qualifications. Defendant absolutely has the right to counsel. However, that counsel is not to be at government expense. 8 U.S.C. § 1252(b)(2). The Sixth Amendment guarantee of representation has no application to civil deportation proceedings. *Michelson v. INS*, 897 F.2d 465, 467–68 (10th Cir.1990) (collecting cases); *Matter of Santos*, 19 I & N Dec. 105 (BIA 1984). Nevertheless, care must be taken to insure that Mr. Hinds' waiver was competently made. *Matter of Gutierez*, 16 I & N Dec. 226, 228 (BIA 1977). The record shows that Mr. Hinds acknowledged receipt of a list of legal aid attorneys, received two adjournments in order to find an attorney, and, finally, expressed his desire to proceed without counsel. As a result, the court finds that Mr. Hinds exercised an effective waiver. *See e.g., Montilla v. INS*, 926 F.2d 162 (2d Cir.1991) (citing *Cobourne v. INS*, 779 F.2d 1564, 1566 (11th Cir.1986) (waiver where court found "Cobourne elected to proceed with the hearing unrepresented"); *Barthold v. INS*, 517 F.2d 689, 691 (5th Cir.1975) (waiver where alien stated he would proceed without lawyer)). Thus, the lack of representation at Mr. Hinds' deportation hearing does not constitute a denial of due process without some showing of prejudice, which implicates the fundamental fairness of the proceeding. *See Michelson*, 897 F.2d at 468; *Santos*, 19 I & N Dec. at 108.

On the issue of prejudice, defendant makes several arguments. First, defendant claims that representation by counsel might have afforded him an opportunity to delay the completion of his deportation hearing for another five months, sufficient time to allow him to establish eligibility for possible relief from deportation as a permanent resident domiciled for seven years. Second, defendant suggests that representation by counsel might have enabled defendant to pursue an administrative appeal from the deportation order so as to delay his physical deportation for the five months in question. Although it is better to adhere to the events as they transpired than to consider potential prejudice resulting from hypothetical possibilities, the law is contrary to defendant's assertions in any event.

At his deportation hearing, defendant admitted to being convicted by a Florida court of selling marijuana, an aggravated felony. *See* 8 U.S.C. § 1101(a)(43). An alien convicted of such an offense is conclusively presumed to be deportable. 8 U.S.C. § 1252a(c). In this case, a five-month continuance, without good cause, would have been inconsistent with the requirement that the Attorney General commence a deportation proceeding as expeditiously as possible following the date of conviction of an offense which makes the alien subject to deportation. 8 U.S.C. § 1252(i); *see also Matter of Garcia–Reyes*, 19 I & N Dec. 830, 832 (BIA 1988). Once the INS commenced the deportation proceeding against the defendant, the Immigration Judge was required to order deportation if the evidence supported a finding of deportability. *Guan Chow Tok v. INS*, 538 F.2d 36, 38 (2d Cir.1976).

As to defendant's second assertion, it too fails to convince. Defendant's deportation was based on an admitted drug conviction, clearly establishing the charged ground of deportation. At the time deportation was ordered, defendant had no basis for relief. Had defendant's hypothetical counsel managed to pursue what could only amount to a frivolous appeal for the five months in question, it is within the Attorney General's discretion to refuse to open deportation proceedings for any alien who becomes eligible for possible relief from deportation while a meritless appeal languished. *See INS v. Rios–Pineda*, 471 U.S. 444, 450, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985). Thus, the question of defendant's representation is foreclosed as a matter of law, and the only issue remaining is whether defendant made a considered or intelligent choice when waiving his right to appeal.

After defendant admitted that he was convicted of selling marijuana, Judge Duck determined that defendant's marijuana conviction was a deportable charge, and the following exchange transpired:

．　 ˙ 　 ˙ 　 ˙ 　 ˙

Judge: Have you any fear of returning to Barbados.

Hinds: No, no fear.

Judge: And, uhh, do wish to apply for any relief from this session? When did you obtain your Green Card, what year?

Hinds: 1982

Judge: What month?

Hinds: November

Judge: Well, do you wish to try to apply to stay in this country?

Hinds: No.

˙ 　 ˙ 　 ˙ 　 ˙ 　 ˙

Judge: Do you wish to accept my decision or do you appeal? You accept my decision or appeal?

Hinds: I accept.

Judge: The decision to deport is final. Sir, do you understand that if you were to re-enter this country within a period of 5 years ----- of the United States Government that you could be prosecuted for that if convicted -------------- Do you understand that.

Hinds: Yes, sir.

Judge: Very well, I will now give a copy of my decision and this hearing is closed.

Item 16, Ex. A.

Before the above exchange ensued, Judge Duck first advised defendant of his right to appeal the court's decision by stating, "And certainly you understand that you have the right to appeal any decisions --------- in Washington, D.C." Thus, together with the three separate occasions noted above, defendant was advised a total of four times about his right to appeal. In fact, more than half of the 27 statements made by the judge during the hearing are concerned with either exploring an avenue of relief for the defendant or explaining his rights.

As opposed to the situation involved in *Mendoza–Lopez*, defendant was not part of a group hearing, and was not given incorrect answers in response to questions concerning his right to appeal. In fact, Immigration Judge Duck evidently explored several areas of possible relief from deportation with the defendant: the seven-year permanent resident exception, defendant's

fear of return to Barbados, and defendant's marital status.

In light of the facts presented on the record and the applicable law, defendant has not established that a lack of counsel prejudiced his due process rights nor would have affected the outcome of his deportation proceeding. Defendant has also failed to convince this court that he did not understand the concept of an appeal, of which he was sufficiently and repeatedly advised during the deportation proceedings, and with which he surely had some experience in his prior state court proceeding.

Accordingly, the motion to suppress the evidence of the deportation order is denied in all respects. Jury selection will proceed on May 7, 1992, at 9 a.m.

So ordered.