**UNITED STATES of America,**

v.

**Donald Alexander BAILEY, Defendant.**

No. 98 CR. 1148(JSR).

United States District Court,
S.D. New York.

July 20, 1999.

Aitan Goelman, New York City, for U.S.

Cecillia Wang, New York City, for Donald Alexander Bailey.

## MEMORANDUM ORDER

RAKOFF, District Judge.

The one-count indictment in this case charges defendant Donald Bailey with violating 8 U.S.C. § 1326 by illegally re-entering the United States in 1998 after having been deported in 1996 subsequent to being convicted of an aggravated felony. A prior valid deportation of defendant is an essential element of this offense. *United States v. Fares*, 978 F.2d 52, 56 (2d Cir.1992). Where defects in the deportation proceeding have effectively foreclosed direct judicial review of the deportation order, the deportation order may be collaterally attacked by a defendant in a § 1326 prosecution. *United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987); *Fares*, 978 F.2d at 56.

Shortly following indictment, defendant Bailey, relying on the above doctrine, moved to dismiss the indictment on the ground that ineffective assistance of counsel fatally infected the administrative proceedings leading to his order of deportation and further subverted his ability to obtain judicial review of that order. In response, the Court, after receiving extensive written submissions from the parties, conducted an evidentiary hearing on April 7, 1999 and April 16, 1999, at which both defendant and his former counsel, Trevor Brooks, Esq., testified. Based on its assessment of the evidence and on its credibility determinations as to the witnesses, the Court finds the facts relevant to Bailey's motion to be as follows:

Bailey is a 45–year–old native and citizen of Jamaica. He first entered the United States on a non-immigrant visa in 1969 and continued to live here under lawful non-immigrant status until 1981, when he attained lawful permanent resident status. In 1982, Bailey was convicted in New York Supreme Court of Criminal Sale of Marijuana in the Fourth Degree, a Class A misdemeanor. In 1985, Bailey was convicted in New York Supreme Court of Criminal Sale of a Controlled Substance in the Fourth Degree, a Class C felony. In 1987, Bailey was convicted in New York Supreme Court of Criminal Possession of Marijuana in the Third Degree, a Class E felony.

On September 30, 1988, the Immigration and Naturalization Service ("INS") ordered Bailey to show cause why, having been convicted of one or more narcotics offenses, he should not be deported pursuant to Section 241(a)(11) of the Immigration and Nationality Act (former 8 U.S.C.A. § 1251(a)(11) (West 1994)). Bailey retained Trevor Brooks, Esq., to act as his counsel in the deportation proceedings. Brooks advised Bailey that, in light of Bailey's criminal history, the best strategy would be to concede deportability but seek a discretionary waiver of deportation under section 212(c) of the Immigration and

Nationality Act (former 8 U.S.C. § 1152(c)). As Brooks explained to Bailey, while the chances of obtaining such a waiver were slim, deportation was otherwise virtually inevitable. Moreover, pursuing the waiver through the administrative process would likely result in a delay of several years, during which time Bailey would be free to remain with his family in the United States. Bailey agreed, and Brooks and his staff then set about to implement this strategy.

Application for a waiver under § 212(c) required, *inter alia*, that Bailey produce supporting documentation and appear for a hearing before an Administrative Law Judge ("ALJ"). However, whether as part of a calculated plan to further delay Bailey's deportation (as the Government argues) or as the result of simple incompetence on Brooks' part (as Bailey argues), Brooks never obtained the necessary documentation [1] or appeared for a final hearing, but, instead, simply kept asking for adjournments from the Honorable Annette Elstein, the ALJ hearing the case. On several occasions, Brooks did not even appear in person to request these adjournments, but, instead, sent a legally-trained but unlicensed employee of his firm, Karen Playfair, to speak on his and Bailey's behalf. Finally, on December 5, 1991, ALJ Elstein, while granting one last adjournment, informed Brooks and Bailey, who on this occasion were both personally present, that a final hearing was firmly scheduled for July 23, 1992 and that Bailey would be required to present his own case if Brooks failed to appear (there being no automatic right to counsel in a deportation proceeding).

On July 22, 1992, the day before the final hearing, Bailey called Brooks' office to confirm that the hearing was still scheduled, that Bailey was still expected to attend, and that Brooks would attend as well. Brooks' secretary informed Bailey that, notwithstanding Judge Elstein's admonitions at the December 5, 1991 conference, another adjournment would be obtained and that, consequently, Bailey need not attend. This was entirely erroneous, but by the time the mistake was uncovered, it was too late for Bailey to attend the hearing. Nor did Brooks attend but, instead, once again sent Ms. Playfair. Judge Elstein thereupon ruled that Bailey had effectively abandoned his § 212(c) claim, and ordered him deported.

After this debacle, communications between Brooks and Bailey became sporadic. One of their few communications occurred a month later, around August 25, 1992, when Bailey was arrested in Brooklyn, New York for selling heroin and initially sought legal advice from Brooks. Ultimately represented by other counsel, Bailey pleaded guilty in New York State Supreme Court to Criminal Possession of a Controlled Substance in the Seventh Degree, a Class A misdemeanor.

Meanwhile, Brooks attempted to protect Bailey's interests by filing an appeal of Judge Elstein's order with the Board of Immigration Appeals ("BIA"), arguing that Bailey's application under § 212(c) should not have been deemed abandoned because Bailey's absence was the result of misinformation provided him by Brooks' firm. Brooks did not, however, submit an affidavit either from Bailey or from Brooks' own secretary supporting these factual allegations. Accordingly, the BIA denied the appeal on January 26, 1994, noting, *inter alia*, the absence of any evidentiary support for the proffered excuse. The Board also noted that no ineffective assistance of counsel claim had been raised on the appeal.

Although Bailey had 30 days from the date of the BIA's decision to exercise his right to petition the Second Circuit Court of Appeals to review his deportation order, no such petition was filed, and Bailey was

---

1. The parties vigorously dispute whether Brooks or Bailey is to blame for Brooks' failure to obtain from Bailey the documents necessary to support the § 212(c) motion. The Court finds it unnecessary to resolve this issue.

deported to Jamaica on June 29, 1996, almost eight years after the INS had first sought his deportation. Thereafter, according to the indictment, he re-entered the United States sometime before January 1998, roughly one and a half years after his deportation.

 In applying the relevant legal principles to the aforementioned facts, the starting place is *Fares*, 978 F.2d at 57, where the Second Circuit held that a deportation order cannot form the basis for a criminal prosecution under § 1326 if the defendant is able to demonstrate both "that he was effectively deprived of his right of direct appeal ... [and] that the administrative proceedings were fundamentally unfair in some respect that would have entitled him to relief on direct appeal." In *United States v. Paredes–Batista*, 140 F.3d 367, 376–379 (2d Cir.1998), the Court of Appeals suggested that inadequacies in an attorney's representation of a deportee might in some cases satisfy both elements of the *Fares* test.[2] Here, however, the alleged deficiencies in Brooks' representation are insufficient to satisfy either prong.

 As to the requirement that Bailey "would have [been] entitled ... to relief on direct appeal," *Fares*, 978 F.2d at 57, Bai-

ley must show not only that Brooks' representation was deficient but also that Bailey was prejudiced thereby. *Rabiu v. Immigration and Naturalization Service*, 41 F.3d 879, 882 (2d Cir.1994). Regarding the deficiencies in Brooks' representation, Bailey has shown that, even though Brooks' overall strategy was reasonable, there was no reasonable justification for Brooks' failure to appear at the July 23, 1992 hearing that Judge Elstein had made clear would be the final hearing. Likewise, Brooks bears responsibility for his secretary's erroneous advice to Bailey that Bailey was not required to appear personally at that hearing. Finally, Brooks' failure to furnish an affidavit supporting the factual assertions on which Bailey's appeal to the BIA rested compounded the earlier incompetence.[3]

 However, despite these three instances of incompetence on Brooks' part, Bailey has failed to show that he was sufficiently prejudiced thereby to have been entitled to relief on direct appeal, *Fares*, 978 F.2d at 57. Even if Brooks and Bailey had appeared on July 23, 1992 before Judge Elstein, it is unlikely that Judge Elstein would have granted Bailey a waiver from deportation given his three drug convictions in the prior ten years.[4]

2. Because a deportation hearing is a civil, not a criminal, proceeding, the putative deportee, as noted, is not entitled to counsel. Accordingly, a deportee's claim that retained counsel's assistance was so deficient as to have deprived him of his constitutional rights will only succeed where the deportee can demonstrate "that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." *Rabiu v. Immigration and Naturalization Service*, 41 F.3d 879, 882 (2d Cir.1994) (quoting *Saleh v. United States Dep't of Justice*, 962 F.2d 234, 241 (2d Cir.1992)).

3. Brooks' assertion that he could not submit an affidavit from Bailey because Bailey disappeared after July 23, 1992, *see* transcript, 4/7/99 at 36, is doubly unpersuasive. First, according to Bailey's uncontroverted testimony, Brooks and Bailey were in communication shortly after Bailey was arrested on Au-

gust 25, 1992 (during the pendency of the BIA appeal). Second, even if Bailey had been unreachable, Brooks could easily have submitted an affidavit from the secretary who advised Bailey not to attend the final hearing—an affiant whose assertions would likely have carried more weight with the BIA in any event since she had far less motive than Bailey to distort the truth.

4. Factors considered by an administrative law judge in evaluating an application for a discretionary waiver of deportation include "the nature and circumstances of the exclusion ground at issue, the presence of additional immigration law violations, the existence of a criminal record and its nature, recency and seriousness, and the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident[,] ... family ties within this country, residence of long duration in this country, evidence of hardship to the alien and alien's family upon

Although Bailey claims he might have persuaded Judge Elstein that he had, in effect, "turned over a new leaf," it is impossible to believe she would have maintained this view once she learned in August of his new arrest and subsequent plea to still another narcotics charge, this time involving heroin. While Bailey further speculates that Judge Elstein would only have learned of this subsequent arrest after she had already granted his waiver application, there is every reason to believe that, even if Judge Elstein had acted with such dispatch, the INS would then have appealed to the BIA, which, apprised of the subsequent conviction, would doubtless have remanded for reconsideration.

In any event, all such speculation is beside the point, because the question under *Fares* is not whether Bailey, if properly represented, would have initially succeeded before either Judge Elstein or the BIA, but whether Brooks' inadequate performance before Judge Elstein and the BIA "would have entitled [Bailey] to relief on direct appeal" to the Second Circuit. *Fares*, 978 F.2d at 57. On any analysis, that appeal would have come well after the heroin conviction and would have included reference to it. *Cf. United States v. Herman*, 172 F.3d 205, 207 (2d Cir.1999) (inquiry, on appeal, into the status of criminal defendant's drug rehabilitation). Such evidence of Bailey's ongoing criminality and continued involvement with serious illegal drugs would have doomed Bailey's assertion that he could make a strong showing in support of his § 212(c) application on remand.

Accordingly, Bailey's collateral challenge to his deportation order must be rejected because Bailey would not have been able to demonstrate on direct appeal that he

was prejudiced by Brooks' inadequate representation.

■ Bailey's motion to dismiss also fails for the independent reason that he cannot demonstrate, as required by the other prong of the *Fares* test, that "he was effectively deprived of his right of direct appeal." *Fares*, 978 F.2d at 57. Even assuming, contrary to fact, that Bailey would have been entitled to relief on direct appeal, he, like the defendant in *Rabiu*, could have filed a petition in the Second Circuit Court of Appeals seeking review of the BIA's order of deportation on the grounds of his former counsel's incompetence. *See Rabiu*, 41 F.3d at 881. Such a petition, if successful, would have provided Bailey with the only relief to which he was entitled on his claim of ineffective assistance, *viz.*, a remand to the administrative law judge to reconsider Bailey's underlying application for discretionary relief from deportation. By contrast, his failure to seek such direct judicial review creates a situation in which the only "remedy" is dismissal of the indictment. In such a situation, it is wholly appropriate to conclude that the defendant's failure to avail himself of his prior opportunity to seek judicial review of his deportation order on direct appeal bars his claim to such review by this Court as part of the instant litigation.

Bailey asserts, however, that the blame for his failure to file a timely petition cannot appropriately be attributed to him because, he alleges, he received no notice of the BIA's decision from either Brooks or the INS (despite their attempts to so notify him). *See* Def.'s Post–Hearing Mem. at 15. Bailey admits, however, that throughout the relevant 30–day filing period,[5] he was living away from home in a

---

deportation, Armed Forces service, employment history, community service, property or business ties, evidence attesting to good character, and, in the case of one convicted of criminal conduct, proof of genuine rehabilitation." *Lovell v. I.N.S.*, 52 F.3d 458, 461 (2d Cir.1995).

5. Under the governing statute, Bailey, as an unlawful immigrant convicted of an aggravated felony, had 30 days from the BIA's January 26, 1994 decision to petition the Second Circuit to review his deportation order. *See* former 8 U.S.C.A. § 1105(a)(1)(West 1994).

drug rehabilitation halfway house, the address of which he has no recollection of having provided to either Brooks or the INS. *See* transcript, 4/16/99, at 57–59. Having failed to apprise either his attorney or the INS of his whereabouts, the blame for Bailey's alleged lack of notice of the BIA's decision falls squarely upon his own shoulders. Accordingly, because he was not unfairly denied his right to direct review, Bailey's collateral challenge must be rejected.

For the foregoing reasons, defendant's motion to dismiss the instant indictment is denied. Counsel for the parties should jointly call Chambers by no later than July 26, 1999 to schedule further proceedings herein.

**SO ORDERED.**