**Albert Leslie TULLOCH, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 00 CIV 6943(DAB).**

United States District Court, S.D. New York.

Sept. 24, 2001.

---

Albert Leslie Tulloch, Fallsburg, NY, pro se.

James Loprest, Sp. Asst. U.S. Atty., S.D.N.Y., New York, NY, for respondent.

## ADOPTION OF REPORT AND RECOMMENDATION

BATTS, District Judge.

On June 22, 2001, Magistrate Judge James Francis IV issued a Report and Recommendation recommending that Petitioner's habeas corpus petition be denied. *See* 28 U.S.C. § 636(b)(1)(C); Local Civil Rule 72.1(d). Petitioner has filed objections to the Report and Recommendation, to which Respondent has responded.

28 U.S.C. § 636(b)(1)(c) requires the Court to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After conducting a *de novo* review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); see also Local Civil Rule 72.1(d).

Petitioner contests his order of deportation following his conviction for murder in the second degree. The facts in this matter are sufficiently set forth in Judge Francis' Report and Recommendation and will not be reiterated here. Judge Francis assessed Petitioner's claim that his due process rights were denied by INS counsel's withholding of crucial evidence at the removal proceeding and the selective reliance on evidence by the Immigration Judge, and that AEDFA and IIRIRA were impermissibly applied to him to deprive him of his opportunity to seek discretionary relief from removal.

Respondent objects that the Report and Recommendation failed to appreciate that the IJ "improperly allowed the passport of someone else into evidence even though it was not clear that the passport belonged to petitioner." Pet. Obj. at 2. Judge Francis, however, found the record indicates that the IJ specifically accorded that passport little weight precisely because its ownership was ambiguous. *See* R & R at 6–7; R. at 57–58. As such, the record belies Petitioner's claim and no prejudice has been established.

Petitioner also objects on the basis of the Second Circuit's holding that a section 212(c) waiver remains available to lawful permanent resident aliens who prior to the 1996 enactment of the IIRIRA, entered a guilty or nolo contendre plea to crimes that made them removable.[1] *See St. Cyr v. INS*, 229 F.3d 406 (2d Cir.2000), *aff'd*, 533 U.S. 289 at ——, n. 52, 121 S.Ct. at 2287 n. 52, 150 L.Ed.2d 347 (2001). Petitioner's objection is unfounded, as any benefit bestowed by *St. Cyr* does not apply to this case. Even assuming the applicability of pre-AEDPA or IIRIRA standards, Petitioner, as Judge Francis correctly found, was ineligible for such waiver because he was never a lawful permanent resident and he had served more than five years of his prison sentence for murder.[2] *See* R & R at 9–10.

---

1. Petitioner essentially restates this objection in a letter dated July 20, 2001, purporting to support further his objections. While the Court need not consider untimely objections, this Court will address the objections contained in the July 20 letter as reiterations of Petitioner's timely objections.

2. Moreover, the rationale of *St. Cyr* is that the relevant date for calculating an alien's reliance on the availability of a 212(c) waiver is the date upon which an alien pleads guilty or *nolo contendre*. Such a rationale arguably does not apply in a case where an alien's conviction is after a jury trial, not a guilty plea, and thus there were no "settled expectations" regarding the availability of a 212(c) waiver.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. *See United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011 (2d Cir.1997).

Accordingly, after conducting an independent *de novo* review of the Report and Recommendation, and reviewing the record herein, it is

ORDERED AND ADJUDGED as follows:

1. The Report and Recommendation of United States Magistrate Judge James Francis IV dated June 22, 2001, is approved, adopted, and ratified by the Court;

2. The petition for a writ of *habeas corpus* is hereby DENIED;

3. The Clerk of the Court is directed to dismiss the petition.

SO ORDERED.

## REPORT AND RECOMMENDATION

FRANCIS, United States Magistrate Judge.

Albert Leslie Tulloch brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging an order that he be removed from the United States following his conviction for murder in the second degree. The petitioner argues that he was denied his Fifth Amendment right to due process of law when counsel for the Immigration and Naturalization Service ("INS") withheld crucial evidence at the removal proceeding, and that the Immigration Judge ("IJ") abused his discretion by selectively relying only on evidence supporting the petitioner's removal. Mr. Tulloch also claims that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009–546, as applied in this case, unconstitutionally deprived him of the opportunity to seek discretionary relief from removal. The respondent contends that Mr. Tulloch's claims are without merit. For the reasons that follow, I recommend that the petition be denied.

### Background

Mr. Tulloch was born in Jamaica on August 1, 1946. (R. at 65, 70).[1] In 1969, while serving as a crewman aboard a Greek vessel, he illegally entered the United States by deserting the ship, which was then docked at a port in the state of Georgia. (R. at 71–72). Mr. Tulloch married Alethia Tulloch,[2] a United States citizen, in 1972, and she submitted a visa application on her husband's behalf sometime in August 1974, seeking to adjust his status to that of a legal permanent resident. (R. at 29–30). The application was subsequently denied because of Mrs. Tulloch's death. (R. at 29).

On October 20, 1988, the petitioner was convicted of second degree murder pursuant to N.Y. Penal Law § 125.25(1) for the death of his wife, and he subsequently received a sentence of twenty-five years to

---

1. "R." refers to the Administrative Record filed with the Respondent's Return.

2. It is unclear whether the petitioner and Alethia Tulloch were ever married. The record does not contain a marriage certificate, and the Appellate Division referred to Mrs. Tulloch as the petitioner's girlfriend. *See People v. Tulloch*, 179 A.D.2d 794, 795, 579

N.Y.S.2d 442, 443 (2d Dep't 1992). On the other hand, in a sworn statement given to INS agents, Mr. Tulloch said the couple had been married, and Mrs. Tulloch claimed to be his wife in the visa application filed on the petitioner's behalf. (R. at 29, 70–71). In any event, Mr. Tulloch's marital status does not affect the outcome of this case.

life imprisonment. (R. at 69). Mr. Tulloch appealed, and the Appellate Division, Second Department, upheld his conviction on January 21, 1992. *People v. Tulloch*, 179 A.D.2d 794, 579 N.Y.S.2d 442 (2d Dep't 1992). The petitioner's application for leave to appeal was denied on April 4, 1992. *People v. Tulloch*, 79 N.Y.2d 1008, 584 N.Y.S.2d 463, 594 N.E.2d 957 (1992).

On July 19, 1999, the INS initiated removal proceedings against Mr. Tulloch based on his murder conviction and status as an undocumented alien, pursuant to Sections 212(a)(2)(A)(i)(I) and 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(2)(A)(i)(I), (a)(6)(A)(i).[3] (R. at 85–87). An administrative hearing was held before Immigration Judge Mitchell Levinsky at the Downstate Correctional Facility in Fishkill, New York, where the petitioner was incarcerated at the time. On the first day of the proceeding, Judge Levinsky informed the petitioner of the charges against him and apprised Mr. Tulloch of his rights, including the right to counsel. (R. at 46). The IJ provided the petitioner with a list of *pro bono* attorneys and adjourned the hearing so that Mr. Tulloch could secure counsel. (R. at 47). The IJ indicated, however, that if Mr. Tulloch were to appear without an attorney on the next date, the hearing would nevertheless continue. (R. at 47).

When the proceedings resumed, the petitioner did appear without an attorney and declined the IJ's offer of a further adjournment to obtain one. (R. at 51–52). To establish Mr. Tulloch's status as an alien, the INS introduced (1) pages from a Jamaican passport, which, according to the agency, belonged to the petitioner; (2) a sworn statement Mr. Tulloch gave INS officers on July 5, 1974, in which he had acknowledged having been born in Jamaica and having entered the United States unlawfully; and (3) the visa petition filed by Alethia Tulloch. (R. at 55, 58, 60–62, 71–72). Mr. Tulloch denied that the passport produced by the INS belonged to him, but he did admit that the signature on the 1974 statement was his. (R. at 57, 60). He refused to answer the judge's questions regarding his alienage and submitted no evidence to rebut the charges brought by the INS. (R. at 53–54).

Judge Levinsky subsequently issued an oral decision in which he found that the INS had met its burden of demonstrating that Mr. Tulloch was neither a citizen of the United States nor a legal permanent resident. The IJ also determined that the petitioner's murder conviction made him ineligible (a) for adjustment of status to that of legal permanent resident pursuant to the waiver provision of Section 212(h) of the INA, 8 U.S.C. § 1182(h), or (b) for cancellation of removal under Section 240A(b) of the Act, 8 U.S.C. § 1229b(b). (R. at 40–41). Accordingly, the judge ordered that Mr. Tulloch be removed from the United States to Belize, a country designated by the petitioner, or alternatively to his native Jamaica. (R. at 40–41).

On March 8, 2000, Mr. Tulloch appealed the IJ's decision to the Board of Immigration Appeals ("BIA") (R. at 23–24), and the removal order became final when the BIA, in a *per curiam* opinion, upheld the ruling below. (R. at 2–4).

---

3. Section 1182(a)(2)(A)(i)(I) denies admission to the United States to any alien who was convicted of "a crime involving moral turpitude ... or an attempt or conspiracy to commit such a crime." Section 1182(a)(6)(A)(i) provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

*Discussion*

### A. *Lack of Due Process at the Administrative Hearing*

The petitioner first argues that the IJ abused his discretion during the administrative hearing by choosing to credit only the evidence that supported the petitioner's removal. (Petition for Writ of Habeas Corpus dated Sept. 1, 2000 ("Petition"), at 5).

■ It is well established that the Fifth Amendment entitles an alien to due process of law in a removal proceeding.[4] *See Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *see also Felzcerek v. Immigration and Naturalization Service,* 75 F.3d 112, 115 (2d Cir.1996). While "a [removal] hearing is a civil matter, and the heightened procedural protections of a criminal trial are not necessarily constitutionally required," *id.* (internal quotations and citation omitted), such a hearing must nevertheless be fundamentally fair. *See Iavorski v. United States Immigration and Naturalization Service,* 232 F.3d 124, 128 (2d Cir.2000) (effectiveness of counsel at deportation hearing reviewed for fundamental fairness); *Felzcerek,* 75 F.3d at 115 (use of evidence at deportation hearing must be fundamentally fair); *see also United States v. Bailey,* 56 F.Supp.2d 381, 384 n. 2 (S.D.N.Y.1999); *United States v. Hinds,* 792 F.Supp. 23, 26 (W.D.N.Y.1992). However, to prevail on a due process claim, a petitioner must present concrete evidence that a violation "had the potential for affecting the outcome of the removal proceedings." *Diaz v. Immigration and Naturalization Service,* 00 Civ. 8273, 2001 WL 69425, at *2 (S.D.N.Y. Jan. 29, 2001) (quotation and citation omitted); *see also Ambati v. Reno,* 233 F.3d 1054, 1061 (7th Cir.2000); *United States v. Gonzalez–Mendoza,* 985 F.2d 1014, 1017 (9th Cir.1993).

Mr. Tulloch's largely conclusory allegations cannot support his claim of judicial misconduct. He argues that the IJ "was aware of all materials in the file that support[ed][the] petitioner's contentions," but "never examined the totality of evidence, . . . rel[ying] on INS counsel to produce only the records which would support removal." (Petition at 5). Yet, he offers no evidence to substantiate this assertion.

■ Mr. Tulloch does point to one specific incident where the IJ's ruling could have influenced the outcome of his deportation proceeding. Throughout his case, the petitioner has maintained that a Jamaican passport presented by the INS at the hearing as evidence of his alienage did not actually belong to him. Mr. Tulloch continues to maintain that the IJ improperly relied on that passport in his ruling, but the record belies the petitioner's claim. In fact, the judge repeatedly questioned the reliability of the passport and ultimately decided to give greater weight to the other documents establishing Mr. Tulloch's al-

---

4. IIRIRA consolidated deportation and exclusion proceedings, applicable to different classes of aliens, into a broader category entitled "removal proceedings." *See* IIRIRA, § 304(a), 110 Stat. at 3009–587, 589, *see also Rojas–Reyes v. Immigration and Naturalization Service,* 235 F.3d 115, 119 (2d Cir.2000); However, no change in substantive law was intended by this purely administrative measure. *See United States v. Pantin,* 155 F.3d 91, 92 (2d Cir.1998) (reference to order of removal deemed to include reference to order of deportation or order of exclusion and deportation); *accord United States v. Lopez–Gonzalez,* 183 F.3d 933, 935 (9th Cir.1999), *cert. denied,* 528 U.S. 1126, 120 S.Ct. 957, 145 L.Ed.2d 830 (2000); *United States v. Pena–Renovato,* 168 F.3d 163, 164 (5th Cir.1999). Therefore, both pre-IIRIRA cases, addressing deportation proceedings, and more recent case law, reviewing removal orders, have the same precedential value. The term "removal" is used here, where appropriate, for the sake of convenience.

ienage—his sworn statement to the INS agents and his wife's application for adjustment of his status. (R. at 57–62).

The petitioner's remaining due process claim stemming from the administrative hearing is equally without merit. He asserts that the INS presented only evidence that supported removal. According to the petitioner, counsel for the INS failed to offer into evidence his affidavits submitted with the application for adjustment of his status. (Petition at 5). Yet, Mr. Tulloch has not produced these affidavits himself at any time during his case. Nor does he explain how these allegedly missing documents could have altered the outcome of the proceeding. Furthermore, the record gives no indication that the INS ever attempted to suppress evidence favorable to the petitioner.

### B. *Constitutionality of the AEDPA and IIRIRA*

#### 1. *Section 212(c)*

The petitioner also claims that the AEDPA and IIRIRA, as applied to his case, denied him relief from removal in violation of his due process rights.

Prior to the enactment of the AEDPA and IIRIRA, certain aliens otherwise determined to be deportable had been entitled to apply for discretionary waivers of deportation under Sections 212(c) and 212(h) of the INA (referred to hereinafter as "Section 212(c) waiver" and "Section 212(h) waiver," respectively), 8 U.S.C. § 1182(c), (h) (1994). To be considered eligible for a Section 212(c) waiver, a criminal alien needed to demonstrate, as a threshold matter, that (1) he had been admitted to the United States as a lawful permanent resident; (2) he had resided in this country continuously for at least seven years; and (3) "his or her conviction was not for 'an aggravated felony,' for which he or she had served a term of imprisonment of five years or longer." *St. Cyr v. Immigration and Naturalization Service,* 229 F.3d 406, 410–411 (2d Cir.2000), *cert. granted,* 531 U.S. 1107, 121 S.Ct. 848, 148 L.Ed.2d 733 (2001) (citing 8 U.S.C. § 1182(c) (1994), *repealed by* IIRIRA, § 304(b), 110 Stat. at 3009–597); *see also Buitrago–Cuesta v. Immigration and Naturalization Service,* 7 F.3d 291, 292 (2d Cir.1993) (Section 212(c) relief applies both to exclusion proceedings and to deportation proceedings of resident aliens).

Enacted on April 24, 1996, the AEDPA significantly restricted the classes of criminal aliens who could apply for a Section 212(c) waiver. *See* AEDPA, § 440(d), 110 Stat. at 1277. IIRIRA, which came into force just a few months later, repealed Section 212(c) in its entirety, *see* IIRIRA, § 304(b), 110 Stat. at 3009–597, and provided for a different avenue of relief in the form of "cancellation of removal" from the United States for an even more narrowly defined class of aliens. *See* IIRIRA, § 304(a), 110 Stat. at 3009–594 (codified in 8 U.S.C. § 1229b(a)); *see also St. Cyr,* 229 F.3d at 410–412 (giving detailed analysis of ·AEDPA and IIRIRA amendments). Under the new Section 240A of the INA, discretionary cancellation of removal is now available only to legal permanent residents who have not been convicted of an aggravated felony. 8 U.S.C. § 1229b(a).

 Having been convicted of murder, an aggravated felony as defined in Section 101(a)(43)(A) of the INA, 8 U.S.C. § 1101(a)(43)(A), Mr. Tulloch is plainly not eligible to apply for a cancellation of removal pursuant to the new provision of the INA, as amended by the AEDPA and IIRIRA. However, he was not entitled to be considered for a Section 212(c) waiver of deportation, in force prior to the enactment of the AEDPA or IIRIRA. First, Mr. Tulloch has never been admitted to

the United States as an a legal permanent resident,[5] and therefore would have been ineligible for such a waiver on that ground alone. Additionally, the petitioner would have been barred, in any event, from Section 212(c) relief in 1993, when he had served five years of his sentence—well before Congress amended the INA.

### 2. *Section 212(h)*

█ Liberally construing his petition, Mr. Tulloch also raises a due process claim based on the denial of a Section 212(h) waiver.[6] He fails in this argument as well. Under this provision of the INA, the Attorney General has the discretion to waive certain grounds for inadmissibility if an otherwise removable alien establishes that his removal would result in "extreme hardship" to a United States citizen or a lawful permanent resident who is an immediate relative of the alien. *See* 8 U.S.C. § 1182(h) (1994). However this form of relief from deportation is unavailable to aliens who have been convicted of murder. IIRIRA did not alter this bar. Indeed, it further restricted relief by excluding those aliens convicted of aggravated felonies. *See* IIRIRA § 348(a), 110 Stat. at 3009–639. Thus, both the IJ and the BIA were correct in determining that Mr. Tulloch was not eligible for relief under Section 212(h).

In addition, Mr. Tulloch failed to advance any evidence establishing that his removal would result in extreme hardship on a family member. The only place where Mr. Tulloch himself raises the issue of extreme hardship is in his Notice of Appeal to the BIA, where he asserts in passing that the IJ's decision was made "without regard[ ] to ties [he] ha[d] already established in [the United States] ... [and his] own daughter." R. at 23. However, the petitioner has not provided evidence supporting any "inference of ... hardship" for himself or his daughter, *United States v. Brown*, 127 F.Supp.2d 392, 409 (W.D.N.Y.2001), and thus has not met the "demanding" standard of proof required in such cases. *United States v. Fernandez–Antonia*, 99 Cr. 1175, 2000 WL 1716436, at *6 (S.D.N.Y. Nov. 15, 2000) (emotional bond between father and son did not distinguish case from "typical hardships that result when families are divided through deportation"); *see also United States v. Arce–Hernandez*, 163 F.3d 559, 564 (9th Cir.1998) (wife's difficulty in finding work abroad after husband's deportation did not constitute extreme hardship); *Chiaramonte v. Immigration and Naturalization Service*, 626 F.2d 1093, 1101 (2d Cir., 1980) (emotional or financial "tribulations" that follow separation of family did not qualify for extreme hardship).

The present provisions of the INA, as amended by the AEDPA and IIRIRA, clearly bar Mr. Tulloch from seeking relief from removal. Moreover, Mr. Tulloch has not established his eligibility for any form of such relief even under Sections 212(c) and 212(h) as they were in force before the

---

5. The petitioner also claims that he would have been admitted as a legal permanent resident but for the INS's failure to make a determination on his wife's 1974 visa application. (Petition at 5–6). However, the INS denied that application as no longer valid following Mrs. Tulloch's death (R. at 29), and it appears from the record that the petitioner has not applied to adjust his status since that time.

6. Mr. Tulloch never refers explicitly to Section 212(h) of the INA in his petition. Yet both the IJ and the BIA considered his eligibility for this type of waiver during the removal proceeding, and the respondent has chosen to interpret the petitioner's arguments here to include a claim based on Section 212(h). (Respondent's Corrected Memorandum of Law dated February 20, 2001 ("Resp.Memo."), at 14).

amendments were enacted. Accordingly, his due process claims are without merit.

*Conclusion*

For the reasons set forth above, I recommend that Albert Leslie Tulloch's application for a writ of habeas corpus be denied and his petition be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, Room 2510, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

June 22, 2001.