**Enrico ST. CYR, Petitioner–Appellee,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellant.**

**Docket No. 99–2614.**

United States Court of Appeals, Second Circuit.

Argued: March 30, 2000

Decided: Sept. 1, 2000

Lucas Guttentag, New York, NY, and Michael G. Moore, Springfield, MA (Lee Gelernt, Christopher J. Meade, American Civil Liberties Union Foundation, New York, NY, of counsel), for Petitioner–Appellee St. Cyr.

David McConnell, Immigration and Naturalization Service, Washington, DC (David W. Ogden, Acting Assistant Attorney General, Civil Division, Stephen C. Robinson, United States Attorney, James K. Filan, Jr., Assistant United States Attorney, New Haven, CT; and Quynh Vu, Office of Immigration Litigation, Immigration and Naturalization Service, Washington, DC, of counsel), for Respondent–Appellant.

Before OAKES, WALKER and KEITH,* Circuit Judges.

Judge John M. Walker, Jr., filed an opinion in dissent.

OAKES, Senior Circuit Judge:

The case before us presents legal questions of reviewability and retroactivity under the 1996 amendments to the Immigration and Nationality Act ("INA"). Congress amended the INA through the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 *et seq.* (1996) and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 *et seq.* (1996). These laws severely narrowed the rights of certain classes of aliens, including those like St. Cyr who were ordered deported because of a prior drug conviction, and have spawned a multitude of judicial decisions.

AEDPA § 440(d) and IIRIRA § 304 significantly limit the cases where discretionary relief from removal can be sought. They effectively preclude an alien, who is removable from the United States because of a conviction of a crime that qualifies as an "aggravated felony" under the law, from applying for discretionary relief from removal. St. Cyr's removal proceedings were commenced after the enactment of the AEDPA and IIRIRA. However, St. Cyr pled guilty to the drug-related offense that rendered him deportable and ineligible under the AEDPA and IIRIRA to apply for discretionary relief a year before the statutes were enacted. He argues that applying the AEDPA § 440(d) and IIRIRA § 304 bar to his removal proceedings would have an impermissible retroactive effect. Thus, in this case, we must determine whether the bar to discretionary relief from removal is properly applied retroactively to pre-enactment guilty pleas.

## BACKGROUND

Enrico St. Cyr, a native of Haiti, was admitted to the United States as a lawful permanent resident on June 17, 1986. St. Cyr's family lives in the United States. His parents and sister are citizens of this country and his brother is a lawful permanent resident.

On March 8, 1996, prior to the enactment date of the AEDPA and IIRIRA, St. Cyr pled guilty to the sale of a controlled hallucinogenic narcotic in violation of Connecticut General Statutes § 21a–277(a). At the time that St. Cyr pled guilty to the charge, the drug conviction rendered him deportable under the immigration laws. *See* INA § 241(a)(2)(B)(i), codified at 8 U.S.C. § 1251(a)(2)(B)(i) (1994), now renumbered as INA § 237(a)(2)(B)(i), codified at 8 U.S.C. § 1227(a)(2)(B)(i) (1999); *see also* INA § 241(a)(2)(A)(iii), codified at 8 U.S.C. § 1251(a)(2)(A)(iii) (1994), now renumbered as INA § 237(a)(2)(iii), codified at 8 U.S.C. § 1227(a)(2)(A)(iii) (1999); INA § 101(a)(43), codified at 8 U.S.C. § 1101(43) (1999).[1]

On April 10, 1997, the Immigration and Naturalization Service ("INS") issued St Cyr a Notice to Appear, charging him as removable under INA § 237(a)(2)(A)(iii) because he had been convicted of an aggravated felony. On January 12, 1998, an immigration judge ("IJ") found that St. Cyr was removable under INA § 237(a)(2)(A)(iii). In the time between St. Cyr's conviction and his receipt of a

---

* The Honorable Damon J. Keith of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. INA § 237(a)(2)(B)(i) provides that "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ...

other than a single offense involving [a small amount of marijuana for one's own use] is deportable."; INA § 237(a)(2)(A)(iii) provides that "Any alien who is convicted of an aggravated felony at any time after admission is deportable."; INA § 101(a)(43), codified at 8 U.S.C. § 1101(43) defines "aggravated felony" to include illicit trafficking in a controlled substance.

Notice to Appear, Congress enacted the AEDPA and IIRIRA. These laws significantly limited the cases where discretionary relief from deportation could be sought and rendered an alien who was removable because of an aggravated felony conviction statutorily ineligible to apply for relief from deportation.

At his hearing, St. Cyr sought to prevent his removal by applying for a discretionary waiver of deportation under former INA § 212(c). *See* 8 U.S.C. § 1182(c) (1996) (repealed by IIRIRA, § 304(b), 110 Stat. at 3009–597, September 30, 1996). The IJ denied St. Cyr's § 212(c) application. St. Cyr appealed his removal order to the Board of Immigration Appeals ("BIA"). Because of the changes made by Congress to the immigration laws, specifically IIRIRA § 304(b)'s repeal of the availability of § 212(c) relief to aliens such as St. Cyr, the BIA dismissed his appeal on November 10, 1998.

On April 27, 1999, St. Cyr filed a habeas corpus petition in the United States District Court for the District of Connecticut. In his petition, he argued that § 440(d) of the AEDPA and IIRIRA § 304 should not be applied retrospectively to bar his eligibility for § 212(c) relief because both his criminal conduct and his conviction occurred prior to the statutes' enactment. The INS argued that the 1996 amendments to the INA divested the district court of jurisdiction to hear St. Cyr's habeas petition. On the merits, the INS argued that § 440(d) of the AEDPA was applicable to St. Cyr's case because removal proceedings had been commenced against him after the effective date of the AEDPA. Specifically, the INS argued that applying § 440(d) to aliens ordered deportable because of a criminal conviction that was entered prior to the AEDPA's effective date was not an unjustified retrospective application of § 440(d).

On August 23, 1999, the district court rejected the INS's arguments and held that it had jurisdiction to hear the habeas petition because the 1996 amendments to the INA did not explicitly divest a district court of its habeas jurisdiction over final removal orders under 28 U.S.C. § 2241. It concluded that the scope of its review pursuant to 28 U.S.C. § 2241 included St. Cyr's statutory claim that the BIA had misapplied the immigration laws.

In addressing the merits of St. Cyr's habeas petition, the district court held that AEDPA § 440(d) is inapplicable to an alien placed in removal proceedings after the AEDPA's enactment if the relevant convictions, criminal proceedings, or underlying criminal conduct occurred prior to enactment. The court reasoned that Congress did not intend AEDPA § 440(d) to be applied retroactively to such pre-enactment events because it would unfairly attach new legal consequences to pre-AEDPA criminal conduct. Thus, the district court concluded that St. Cyr's removal proceedings should be governed by the laws that were in effect at the time he committed the crime. The INS timely appealed.

## DISCUSSION

### I. Jurisdiction.

Because the question whether the district court had subject matter jurisdiction in this case is a question of law, we review it *de novo*. *See ConnTech Dev. Co. v. University of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 681 (2d Cir.1996).

■ The INS's arguments that the district court lacked jurisdiction under 28 U.S.C. § 2241 to decide St. Cyr's claim are foreclosed by our decision in *Calcano–Martinez v. I.N.S.*, 232 F.3d 328 (2d Cir. 2000), a case argued on the same day as this one. In that case, we held that the permanent rules of IIRIRA do not divest Article III courts of their habeas jurisdiction under 28 U.S.C. § 2241 to review statutory and constitutional challenges to final removal orders when no other avenue for judicial review is available. Here, no such avenue existed because St. Cyr, con-

victed of a crime involving a controlled substance, is an alien deportable under INA § 237(a)(2)(A)(iii). A petition in the court of appeals pursuant to INA § 242(a)(1) is, therefore, unavailable to him. *See* 8 U.S.C. § 1252(a)(2)(C) (1999).

Although a federal court's habeas jurisdiction does not include all challenges that an alien may launch against his or her removal order, St. Cyr's habeas petition raises pure questions of law. He is not challenging the BIA's refusal to exercise its discretion in his favor. Rather, he is challenging the BIA's determination that it cannot legally consider St. Cyr's request to exercise its discretion. Therefore, his habeas challenge to his final order of removal is the type of claim that is cognizable in the district court under 28 U.S.C. § 2241.

Because there is no other avenue for judicial review available and St. Cyr's petition raises a purely legal challenge to his final order of removal, the district court had subject matter jurisdiction to review his habeas petition.

II. Availability of § 212(c) relief.

Having determined that the district court had jurisdiction to decide St. Cyr's claim, we turn to the issue raised by St. Cyr in his habeas petition: whether AEDPA § 440(d) and IIRIRA § 304, which essentially make discretionary relief unavailable to an alien like St. Cyr, apply to his removal proceeding.

A. History of Discretionary Relief.

Under the law in effect prior to the enactment of the AEDPA, certain aliens otherwise determined to be deportable were entitled to apply to the Attorney General or her delegates[2] for a waiver of deportation under INA § 212(c), 8 U.S.C. § 1182(c) (1994). Former § 212(c) provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an or-

der of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [provisions setting forth various grounds for exclusion].... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least five years.

8 U.S.C. § 1182(c) (1994) (repealed by IIRIRA § 304(b), 110 Stat. at 3009–597, Sept. 30, 1996).

Although the literal terms of § 212(c) appeared to apply only to resident aliens who had temporarily proceeded abroad and were returning to the United States, since 1976 the section has been interpreted by this Court to permit the Attorney General to waive the grounds for deportation under certain conditions in the case of a lawfully admitted permanent resident in deportation proceedings. *See Buitrago–Cuesta v. INS,* 7 F.3d 291, 292 (2d Cir. 1993); *Francis v. INS,* 532 F.2d 268, 272–73 (2d Cir.1976).

Discretionary relief from deportation, which has been available in our system in some form since at least 1917, *see Francis,* 532 F.2d at 270, provides the Attorney General with a mechanism to consider the impact of immigration on an alien's family. Prior to 1996, INA § 212(c) gave power to the Attorney General to permit a worthy alien to stay in this country in order to avoid extraordinary hardship to the alien's family in the United States. *See id.* at 272. In a case where a convicted alien demonstrated that he or she had a lawful unrelinquished domicile in the United States for at least seven years and that his or her conviction was not for an "aggravated felony," for which he or she had served a term of imprisonment of five years or longer, the Attorney General could, in her discretion, waive deportation. *See* 8

and the BIA.

---

**2.** The Attorney General's delegates include IJs

U.S.C. § 1182(c) (1994). Under the law in effect before 1996, if the Attorney General denied relief, the alien could challenge that denial by filing a petition for review in the court of appeals. *See* 8 U.S.C. § 1105a(a) (1994) (repealed by IIRIRA § 306(b), 110 Stat. at 3009–612, Sept. 30, 1996).

On April 24, 1996, Congress enacted the AEDPA, of which § 440(d) expanded the category of criminal convictions that would render an alien ineligible to apply for § 212(c) relief. The explicit goal of the AEDPA was to enhance "the ability of the United States to deport criminal aliens." H.R. Conf. Rep. No. 104–518, at 119 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 952.[3] Section 440(d) struck the language "has been convicted of one or more aggravated felonies" and that which followed in § 212(c) and inserted the following bar:

> This section shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i).

AEDPA § 440(d), 110 Stat. at 1277.[4] Under the amended version, a waiver could not be granted to an alien convicted of certain enumerated offenses including a drug-related crime, two or more offenses involving moral turpitude, and an aggravated felony, regardless of time served in prison.

3. This was by no means Congress's first attempt to narrow a criminal alien's eligibility for a waiver from deportation. Congress passed the Anti–Drug Abuse Act of 1988 and made conviction of an aggravated felony an additional ground for deportation. *See* Anti–Drug Abuse Act of 1988 § 7344, 102 Stat. at 4470–71 (codified at 8 U.S.C. § 1251(a)(2)(A)(iii) (1996)). In 1990, Congress amended § 212(c) and precluded waiver for aliens convicted of aggravated felonies who had served at least five years in prison for the conviction. *See* Immigration Act of 1990, Pub.L. No. 101–649, § 511(a), 104 Stat. 4978, 5052 (1990), codified at 8 U.S.C. § 1182(c). Also in 1990, Congress expanded

Just a few months later, on September 30, 1996, Congress enacted IIRIRA, which wrought further changes to the availability of deportation waivers. IIRIRA included temporary transitional rules and permanent rules. Under the statutory interplay of IIRIRA's transitional rules and the AEDPA, the Attorney General was able, in her discretion, to grant relief from deportation under INA § 212(c) as amended by § 440(d). *See* IIRIRA § 309(c)(1), 110 Stat. at 3009–625 (most of IIRIRA amendments to the INA do not apply to aliens placed in deportation proceedings prior to April 1, 1997); *see also Tasios v. Reno*, 204 F.3d 544, 547 n. 1 (4th Cir.2000).

The permanent provisions of IIRIRA, however, repeal INA § 212(c) altogether and consolidate prior "suspension of deportation" relief and aspects of former § 212(c) relief into an entirely new form of relief. *See* 8 U.S.C. § 1229b(a)(3) (1999). Section 304(a) of IIRIRA, entitled "Cancellation of removal for certain permanent residents," found at INA § 240A, provides:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
>
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and

the definition of aggravated felony to include more offenses and render a greater number of criminal aliens ineligible for discretionary relief. *See id.* § 501, 104 Stat. at 5048. Again, in 1994, Congress expanded the definition of aggravated felony to include more classes of crimes. *See* Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416 § 222(a), 108 Stat. 4305, 4322 (1994), codified at 8 U.S.C. § 1101(a)(43).

4. INA § 241, codified at 8 U.S.C. § 1251 (1994) was renumbered by IIRIRA as INA § 237, codified at 8 U.S.C. § 1227. *See* IIRIRA 305(a)(92), 110 Stat. at 3009–598.

(3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a) (1999). Cancellation of removal is thus limited to a smaller category of aliens than had historically been eligible for pre-AEDPA § 212(c) relief because it is unavailable to all aliens convicted of aggravated felonies and not just to those imprisoned for more than five years. *Compare* 8 U.S.C. § 1182(c) (1994) *with* 8 U.S.C. § 1129b (1999). Cancellation of removal, however, is categorically available to a larger number of aliens than those eligible under AEDPA § 440(d) because it restores the availability of discretionary relief for aliens deportable because they committed two or more crimes of moral turpitude under INA § 237(a)(2)(A)(ii). *Compare* 8 U.S.C. § 1182(c) as amended by AEDPA § 440(d) *with* 8 U.S.C. § 1229b (1999)

This complex statutory history applies to St. Cyr as follows: when St. Cyr pled guilty to drug trafficking in March of 1996, he was deportable under the immigration laws as an alien convicted of a drug-related offense which constituted an aggravated felony as defined under the INA. *See* 8 U.S.C. § 1251(a)(2)(B)(i) (1994); 8 U.S.C. § 1251(a)(2)(A)(iii) (1994); 8 U.S.C. § 1101(a)(43). At the time he pled guilty to the deportable offense, he was eligible to apply for a waiver of deportation under § 212(c) of the INA. On April 24, 1996, before removal proceedings were commenced against St. Cyr, AEDPA § 440(d) was enacted, making aliens such as he ineligible to apply for a § 212(c) waiver. By April 10, 1997, the date that removal proceedings against St. Cyr were commenced, INA § 212(c) relief had been repealed by IIRIRA § 304(b) and replaced by "cancellation of removal" in § 304(a). St. Cyr was ineligible to apply for "cancellation from removal" by its terms because he was convicted of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43). Thus, if either AEDPA § 440(d) or IIRIRA § 304 apply to this case, as the INS argues, St. Cyr is removable because he pled guilty to a de-

portable offense and is statutorily ineligible to apply to the BIA for discretionary relief from deportation.

**B.  Retroactivity.**

Our analysis of whether AEDPA § 440(d) and IIRIRA § 304 (referred to collectively as "the bar to relief") apply to removal proceedings against an alien who pled guilty to a deportable crime before the date of IIRIRA's enactment is governed by the legal principles announced by the Supreme Court in its landmark decisions, *Landgraf v. USI Film Prod.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) and *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). The Supreme Court directs that we begin with the "presumption ... deeply rooted in our jurisprudence," against the retroactive application of legislation. *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483; *Hughes Aircraft*, 520 U.S. at 946, 117 S.Ct. 1871 (quoting *Landgraf*). This "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483 (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, *J.*, concurring)). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* Application of this presumption requires that statutes are not afforded retrospective effect unless "Congress has clearly manifested its intent to the contrary." *Hughes Aircraft*, 520 U.S. at 946, 117 S.Ct. 1871.

The Supreme Court in *Landgraf* provided the following framework for determining whether a law should apply to cases where the underlying conduct occurred prior to enactment:

When a case implicates a federal statute enacted after the events in suit, the

court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* 511 U.S. at 280, 114 S.Ct. 1483. *Landgraf* therefore contemplates a two-step inquiry: (1) whether Congress prescribed the statute's temporal reach and, if not, (2) a determination whether retrospective application would have a "retroactive effect." If application of the statute to the conduct at issue would have a retroactive effect, "then, in keeping with our 'traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct." *Martin v. Hadix,* 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483).

### 1. Congressional Intent.

■ Our first step under *Landgraf* is to determine, using ordinary tools for statutory interpretation, whether Congress expressly prescribed that AEDPA § 440(d) and IIRIRA § 304 should be applied to removal proceedings involving convictions entered prior to its enactment. *See* 511 U.S. at 280, 114 S.Ct. 1483. In *Henderson v. INS,* 157 F.3d 106, 129–30 (2d Cir.1998), *cert. denied, Reno v. Navas,* 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999), we analyzed whether AEDPA § 440(d) applied to deportation proceedings pending on the date of enactment. Our analysis ended after the first *Landgraf* step because there existed "abundant direct evi-

dence that the section was *not* intended to apply retroactively" to deportation proceedings pending on the date of enactment. *See id.* at 129. Our decision that Congress clearly intended that AEDPA § 440(d) not apply to aliens for whom deportation proceedings had, on the date of AEDPA's enactment, already commenced, was in accord with the majority of U.S. Courts of Appeals to consider the same question. *See Magana–Pizano v. INS,* 200 F.3d 603, 611 (9th Cir.1999); *Pak v. Reno,* 196 F.3d 666, 675–76 (6th Cir.1999); *Shah v. Reno,* 184 F.3d 719, 724 (8th Cir. 1999); *Mayers v. INS,* 175 F.3d 1289, 1303–04 (11th Cir.1999); *Goncalves v. Reno,* 144 F.3d 110, 133 (1st Cir.1998), *cert. denied, Reno v. Pereira Goncalves,* 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Sandoval v. Reno,* 166 F.3d 225, 241–42 (3d Cir.1999); *LaGuerre v. Reno,* 164 F.3d 1035, 1040–41 (7th Cir. 1998), *cert. denied, LaGuerre v. Reno,* —— U.S. ——, 120 S.Ct. 1157, 145 L.Ed.2d 1069 (2000).

The specific issue raised in this case, however, is not whether the bar to relief applies to pending removal proceedings but whether it bars an alien who pled guilty to the deportable crime before the AEDPA or IIRIRA's effective date from applying for a waiver. The question whether Congress intended AEDPA § 440(d) to apply to removal proceedings against an alien ordered removed because of a pre-enactment conviction or criminal conduct has been much discussed in numerous published opinions of district courts and courts of appeals. When the past conduct under the *Landgraf* analysis changes from the commencement of removal proceedings to the conviction or criminal conduct, the majority of courts of appeals that have considered AEDPA § 440(d) conclude that Congress's intent whether to apply the law retrospectively is ambiguous. *See Mattis v. Reno,* 212 F.3d 31, 36 (1st Cir.2000); *Tasios v. Reno,* 204 F.3d 544, 550 (4th Cir.2000); *Magana–Pizano,* 200 F.3d at 612; *Requena–Rodri-*

*guez v. Pasquarell,* 190 F.3d 299, 307–8 (5th Cir.1999); *DeSousa v. Reno,* 190 F.3d 175, 186–87 (3d Cir.1999); *Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1150 (10th Cir.1999), *cert. denied Palaganas–Suarez v. Greene,* — U.S. ——, 120 S.Ct. 1539, 146 L.Ed.2d 352 (2000); *Turkhan v. Perryman,* 188 F.3d 814, 826 (7th Cir.1999). We agree with the majority of courts that have held that Congress's intent whether to apply AEDPA § 440(d) to pre-enactment convictions is ambiguous and because the question has been thoroughly analyzed in the foregoing opinions, we do not set forth our own detailed analysis of AEDPA § 440(d).

We turn now to IIRIRA § 304(b). The INS argues that, unlike AEDPA § 440(d), Congress provided specific "statutory guidance" in IIRIRA § 309(a) as to whether IIRIRA § 304 reaches back to bar an alien who pled guilty to a deportable crime before the effective date of IIRIRA. IIRIRA § 309(a) provides that the new rules added by IIRIRA §§ 301–308, including IIRIRA's repeal of § 212(c) relief and substitution of cancellation of removal relief contained in IIRIRA § 304(a), apply to an alien covered by the rules unless that alien is currently in removal proceedings. *See* IIRIRA § 309(a), 110 Stat. at 3009–625 (new rules apply except to "an alien who is in exclusion or deportation proceedings as of [April 1, 1997]"). Thus, according to the INS, Congress indicated that IIRIRA's permanent rules, including § 304, apply in cases such as St. Cyr's that are commenced after April 1, 1997.

We disagree that IIRIRA's general effective date provision set forth in IIRIRA § 309(a) demonstrates that Congress carefully considered whether the repeal of the only opportunity for relief from removal should bar that relief for an alien who pled guilty prior to IIRIRA's enactment to the crime rendering him or her removable. In *Landgraf,* the Supreme Court noted that a provision stating that "[a] statute will become effective on a certain date does not even arguably suggest that it has any ap-

plication to conduct that occurred at an earlier date." 511 U.S. at 257, 114 S.Ct. 1483. Although the language in IIRIRA § 309(a) is arguably more direct than a typical effective date provision, it is not precise enough to mandate retroactive application of IIRIRA § 304 under the first step of the *Landgraf* inquiry. "[T]he only presumption mentioned in [*Landgraf*] is a general presumption *against* retroactivity," *Hughes Aircraft,* 520 U.S. at 950, 117 S.Ct. 1871. Accordingly, in its post-*Landgraf* decisions, the Supreme Court has indicated that a "heightened level of clarity" is required to justify the retroactive application of a law that implicates past conduct. *See Salahuddin v. Mead,* 174 F.3d 271, 275 (2d Cir.1999) (citing *Lindh v. Murphy,* 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Hughes Aircraft,* 520 U.S. at 946, 117 S.Ct. 1871 (1997)). Therefore, Congress must have used statutory language that can "sustain only one interpretation" in order to make IIRIRA § 304 retroactive to pre-enactment guilty pleas. *See Lindh,* 521 U.S. at 328 n. 4, 117 S.Ct. 2059. We shall not infer from the general language contained in IIRIRA § 309(a), making § 304 effective in pending proceedings, that Congress also intended the bar to discretionary relief to apply to pre-enactment guilty pleas, an application that we hold today has an impermissible retroactive effect. *See infra* at Section IIB(2).

An examination of other IIRIRA provisions demonstrates that despite the general effective date provision, Congress made sure to use specific language, capable of only one interpretation, when it clearly intended a provision to apply to past conduct relevant to the particular provision. *See, e.g.,* IIRIRA § 321(c), 110 Stat. at 3009–628 (providing that amended definition of "aggravated felony" applies regardless of "when the *conviction* occurred") (emphasis added); IIRIRA § 322(c), 110 Stat. at 3009–629 (providing that new definitions of "conviction" and "term of imprisonment" shall apply "to *convictions* and

*sentences* entered before, on, or after the date of the enactment of this Act") (emphasis added); IIRIRA § 324(c), 110 Stat. at 3009–629 (providing that provision governing re-entry of deported aliens applies to *"departures* that occurred before, on, or after the date of enactment" of IIRIRA) (emphasis added); IIRIRA § 347(c), 110 Stat. at 3009–639 (providing that provision rendering an alien deportable because he or she voted in violation of the law is applicable to *"voting* occurring before, on, or after the date of the enactment of this Act.") (emphasis added). Indeed, that Congress knew how to explicitly make an IIRIRA provision applicable to "convictions and sentences entered before, on, or after the date of the enactment of the Act," is demonstrated by IIRIRA § 321(c) and IIRIRA § 322(c). Because Congress made some provisions specifically applicable to prior convictions but did not do so in regard to IIRIRA § 304, it appears that Congress did not definitively decide the issue of § 304's retroactive application to pre-enactment convictions.

The INS notes that the removal ground underlying St. Cyr's proceedings, made applicable by IIRIRA, renders aliens subject to removal proceedings if they were *"convicted* of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii) (1999) (emphasis added). The INS argues that the use of past-tense language to qualify the timing of a deportable conviction shows that Congress clearly intended that an alien, such as St. Cyr, who committed his or her crime and was convicted prior to IIRIRA's April 1, 1997, effective date would become subject to removal proceedings in which § 212(c) relief is no longer available.

We are not persuaded that the use of the past tense in INA § 237 is an indication that Congress intended IIRIRA § 304 to apply retrospectively. A similar argument was considered and rejected by the Supreme Court in *Martin v. Hadix,* 527 U.S. at 354–55, 119 S.Ct. 1998. There, the Court considered the retroactivity of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(d)(3), which limited the fees available to prisoners' attorneys who were monitoring prisons post-judgment. *See Martin,* 527 U.S. at 347, 119 S.Ct. 1998. The petitioners argued that the language of § 803(d)(1)—"[i]n *any* action *brought* by a prisoner who is confined [to a correctional facility] ... attorney's fees ... shall not be awarded"— clearly expressed a congressional intent that § 803(d) apply to pending cases. *Id.* at 2003–04, 119 S.Ct. 1998 (emphasis added). The Court rejected the argument that Congress's use of a past-tense verb clearly indicated Congress's intent that the provision apply to pending cases. The Court reasoned that § 803(d)(1) "define[s] the substantive availability of attorney's fees; [it] [does] not purport to define the temporal reach of these substantive limitations." *Id.* at 354, 119 S.Ct. 1998. Thus, the Court concluded that the language fell short of demonstrating a clear congressional intent to apply § 803(d) retrospectively to pending cases and that had Congress intended the provision to apply to all fee orders, including those compensating work performed before the effective date, "it could have used language more obviously targeted to addressing the temporal reach of that section." *Id.*

Under the reasoning of *Martin,* the use of a past-tense verb in INA § 237(a)(2)(iii) is not dispositive of Congress's intent to apply IIRIRA § 304 retroactively to pre-enactment convictions. The language "convicted of an aggravated felony" in INA § 237(a)(2)(iii) is used to describe the substantive availability for removal from the United States. It is not used to describe the retrospective application of IIRIRA § 304. We therefore cannot and will not rely on the text of INA § 237(a)(2)(A)(iii) to hold that IIRIRA § 304 applies in cases where an alien pled guilty to the underlying deportable crime prior to IIRIRA's enactment.

This is not to say that the INS's argument is not sophisticated. In *Salahuddin,*

this Court relied on a similarly formulated argument to hold that Congress clearly intended that a statute be applied prospectively. 174 F.3d at 274–75. In that case, the appellant argued that the exhaustion requirement of 42 U.S.C. § 1997e(a), as amended by the PLRA, should not apply to an action pending at the time of its enactment. *See id.* at 272. Because the new provision provided that no action "shall be brought" until administrative remedies are exhausted, we concluded that a plain reading of the statute made it clear that Congress intended it to be applied prospectively. *Id.* at 274. We reasoned there that the use of the future tense in the provision was sufficient evidence of Congress's intent to apply the statute prospectively. *See id.* at 274–75. An interpretation that supports the application of a statute prospectively, however, does not justify its retroactive application. *See id.* at 275 (distinguishing between interpretations justifying prospective and retroactive applications); *see also Goncalves*, 144 F.3d at 129 (refusing to require that Congress draft an explicit effective date provision to insure against retroactive application because that rule would reflect a presumption in favor of retroactive application). The longstanding presumption is *against*, not in favor of, the retroactive application of a statute to pre-enactment conduct. *See Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483. Were we to infer from the sole use of a tense that Congress intended the IIRIRA § 304 bar to apply to past conduct, we would reverse this established presumption. Therefore, although we interpreted a 42 U.S.C. § 1997e(a) in *Salahuddin* to apply prospectively based on the use of future tense phraseology, the presumption against retroactive application requires a more explicit statement from Congress to interpret IIRIRA § 304 to apply retroactively.[5]

In sum, we conclude that there is no clear evidence that Congress considered and decided whether IIRIRA § 304's bar to relief from removal applies retrospectively to removal proceedings commenced after IIRIRA's enactment against an alien who pled guilty to the underlying criminal conduct before its enactment. The requirement that Congress "first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Landgraf*, 511 U.S. at 268, 114 S.Ct. 1483. The statutory language does not convince us, and the INS has pointed to no legislative history in support of the conclusion, that Congress specifically considered the precise issue whether IIRIRA § 304 should be applied to an alien who rendered a pre-enactment guilty plea. Therefore, we hold Congress's intent with respect to the application of IIRIRA § 304 to pre-enactment convictions is unclear.[6]

---

**5.** St. Cyr, relying on a brief submitted in the consolidated cases, *Calcano–Martinez v. INS*, 232 F.3d 328 (2d Cir.2000), agrees that IIRIRA lacks an express directive that the statute apply retrospectively and contends that IIRIRA reveals Congress's explicit intent that "cancellation of removal" be applied only to those cases involving post-enactment convictions. According to St. Cyr, the absence of specific retrospective language in IIRIRA § 304, when such language is used in other IIRIRA provisions, requires the court to infer by negative implication that Congress clearly intended IIRIRA § 304 to apply prospectively. We disagree. The provisions for which Congress expressly provided a retroactive temporal reach cover distinct subject matters that are too dissimilar to the availability of discretionary relief to support a negative inference in favor of prospective application of IIRIRA .§ 304. *See Martin*, 527 U.S. at 356–57, 119 S.Ct. 1998. In addition, the effective date provision in IIRIRA § 309(a), although it does not make IIRIRA § 304 retroactive to pre-enactment convictions, does render Congressional intent ambiguous. Therefore, we decline to infer from this lack of guidance that Congress intended IIRIRA § 304 to apply only prospectively and hold that Congress's intent as to the section's temporal reach is ambiguous.

**6.** In some cases, the interest in avoiding constitutional questions will cause a court to refrain from applying a statute retroactively. *See Landgraf*, 511 U.S. at 267 n. 21, 114 S.Ct. 1483 (citing *Pension Benefit Guar. Corp. v.*

## 2. Retroactive Effect.

Having concluded that no clear congressional intent exists as to whether AEDPA § 440(d) or IIRIRA § 304 apply to an alien who pled guilty to a removable crime prior to the statute's enactment, we must determine whether a bar to relief has any retroactive effect. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *Hughes Aircraft,* 520 U.S. at 946, 117 S.Ct. 1871. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483. Rather, our inquiry requires a "common sense, functional judgment" to determine "whether the new provision attaches new legal consequences to events completed before its enactment." *Martin,* 527 U.S. at 357–58, 119 S.Ct. 1998 (quoting *Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483). A statute that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" has retroactive effect. *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483.

We are the first U.S. Court of Appeals to consider whether applying IIRIRA § 304 to pre-enactment convictions is impermissibly retroactive. A number of our sister courts, however, have considered the similar question of whether the scope of AEDPA § 440(d) extends to deportation proceedings that involve convictions or guilty pleas that occurred prior to the AEDPA's enactment. The Tenth, Fifth, and Third Circuits have analyzed whether AEDPA § 440(d) was retroactive as applied to aliens whose criminal convictions occurred prior to the AEDPA's effective date. *See Jurado–Gutierrez,* 190 F.3d at 1147; *Requena–Rodriguez,* 190 F.3d at 306; *DeSousa,* 190 F.3d at 185. Having found that Congressional intent to apply AEDPA § 440(d) retrospectively was ambiguous, these Courts, adopting the INS's position, determined that there existed no impermissible retroactive effect in applying AEDPA § 440(d) to pre-enactment convictions. *See Jurado–Gutierrez,* 190 F.3d at 1150–52; *Requena–Rodriguez,* 190 F.3d at 307–8; *DeSousa,* 190 F.3d at 187.

In three very recent cases, the First, Fourth, and Ninth Circuits had occasion to consider specifically whether AEDPA § 440(d) reached backward to cover a pre-enactment guilty or *nolo contendere* plea to an otherwise qualifying offense. *See Mattis,* 212 F.3d at 37; *Tasios,* 204 F.3d at 551; reh'g *en banc* denied, *Tasios v. Reno,* No. 99–6061 (4th Cir.) (May 25, 2000); *Magana–Pizano,* 200 F.3d at 612. In these cases, the relevant conduct for the retroactive determination was specifically a guilty or *nolo contendere* plea. The Fourth Circuit concluded that application of AEDPA § 440(d)'s bar on discretionary relief previously afforded by INA § 212(c) to guilty pleas made before the AEDPA's enactment "would upset reasonable, settled expectations and change the legal effect of prior conduct." *Tasios,* 204 F.3d at 552. Accordingly, that Circuit adopted a

---

*R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 17, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). Our holding in this case is guided, in part, by that principle. Even when Congress clearly intends that legislation is to be applied to past conduct, Congress's broad power to enact retroactive legislation does not go completely unchecked. The Fifth Amendment's Due Process Clause places a narrow limit on Congress's power to sweep away citizens' settled expectations under the law. The Constitution's safeguard against retroactivity is especially appropriate where it protects an unpopular group or individual. *See Landgraf,* 511 U.S. at 266, 114

S.Ct. 1483; *Pottinger,* 51 F.Supp.2d at 361 (the presumption against retroactivity "reflects our enduring commitment to the protection of the unpopular and the voiceless from the retributive and vindictive use of retroactive legislation."). Because, in our view, a profound constitutional question would arise under the Fifth Amendment's Due Process Clause were we to interpret IIRIRA as precluding the availability of § 212(c) relief in cases where an alien pled guilty or *nolo contendere* in reliance on the availability of § 212(c) relief, our ruling today that IIRIRA § 304 does not apply retroactively to pre-enactment guilty pleas avoids this result.

blanket rule that AEDPA § 440(d) does not apply retroactively. *See id.* The First and Ninth Circuits, adopting a middle ground, determined that AEDPA § 440(d) should not apply to an alien who can make a specific showing that he or she entered a guilty or *nolo contendere* plea in reliance upon the relief afforded by INA § 212(c). *See Mattis,* 212 F.3d at 39–40; *Magana–Pizano,* 200 F.3d at 613–14.

Finally, the Seventh Circuit has developed an approach that is in accord with the decisions of the First and Ninth Circuits. It has announced a general rule that AEDPA § 440(d)'s bar on INA § 212(c)'s discretionary relief applies retroactively to pre-enactment guilty pleas. *See La-Guerre,* 164 F.3d at 1041; *Turkhan,* 188 F.3d at 827. It has also, however, identified a particular set of circumstances where applying AEDPA § 440(d) to past conduct would have an impermissible retroactive effect. Under the law of the Seventh Circuit, AEDPA § 440(d) applies retrospectively unless an alien actually had conceded deportability, despite a colorable defense, in reliance upon receiving a § 212(c) waiver. *See Turkhan,* 188 F.3d at 827; *Morales–Ramirez v. Reno,* 209 F.3d 977, 982 (7th Cir.2000).

We conclude that AEDPA § 440(d) and IIRIRA § 304 as applied to a guilty or *nolo contendere* plea that pre-dates the statutes' enactment has an impermissible retroactive effect. In so holding, we follow the reasoning of the Fourth Circuit in *Tasios v. Reno* that such an application of the bar to relief would upset settled expectations and change the legal effect of prior conduct.

As an initial matter, we note that it is difficult to argue that barring eligibility for discretionary relief on the basis of pre-enactment criminal conduct—as opposed to a plea going to the guilt of a deportable crime—constitutes an impermissible retroactive application of a statute. Indeed, we agree that,

> It would border on the absurd to argue that these aliens might have decided not

to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.

*Jurado–Gutierrez,* 190 F.3d at 1150–51 (quoting *LaGuerre,* 164 F.3d at 1041). Thus, we conclude that the bar to discretionary relief applies regardless of whether a legal permanent alien's underlying criminal conduct pre-dated the AEDPA or IIRIRA.

However, in *Hughes Aircraft,* the Supreme Court conducted a retroactivity analysis that was not focused solely on the petitioner's primary conduct, but also on the relevant secondary conduct. *See* 520 U.S. at 947–48, 117 S.Ct. 1871. Furthermore, "it is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief." *Mattis,* 212 F.3d at 37. Thus, in considering whether the changes to the availability of discretionary relief would alter the legal effect of conduct that predates the AEDPA and IIRIRA's enactment, our analysis focuses on the decision to enter a guilty plea to a crime—not on the criminal conduct—that qualifies the alien for removal under the immigration laws.

A "legal change that would have an impact on private parties' planning" triggers the presumption against retroactivity. *See Landgraf,* 511 U.S. at 282–83, 114 S.Ct. 1483. A number of courts have documented that "an alien charged with a crime [making him eligible for deportation] would factor the immigration consequences of conviction in deciding whether to plead or proceed to trial...." *Tasios,* 204 F.3d at 552 (quoting *Magana–Pizano,* 200 F.3d at 612); *see also Pottinger v. Reno,* 51 F.Supp.2d. 349, 362–63 (E.D.N.Y.1999); *Wallace v. Reno,* 24 F.Supp.2d 104, 110 (D.Mass.1998), *aff'd* 194 F.3d 279 (1st Cir. 1999); *Mojica v. Reno,* 970 F.Supp. 130, 177 (E.D.N.Y.1997), *aff'd in part, dis-*

*missed in part, Henderson v. INS*, 157 F.3d 106 (2d Cir.1998); *Reyes–Hernandez v. INS*, 89 F.3d 490, 492 (7th Cir.1996).

As the Amici[7] in this case demonstrate, a legal resident who is charged with a crime that renders him removable from the United States carefully considers the immigration consequences of his or her conviction and, specifically, the availability of discretionary relief from removal. It is not unreasonable to attribute knowledge of the availability of relief to a legal resident because it is a common requirement that defense counsel and the court advise a criminal defendant of the immigration consequences of a guilty plea. Additionally, an attorney's professional duty to his or her client includes advising that client of the immigration consequences of a plea or conviction. *See Magana–Pizano*, 200 F.3d at 612; *see also ABA Standards for Criminal Justice*, Pleas of Guilty, Standard 14–3.2, commentary at 75 (2d ed.1982) (providing that where it is apparent that a defendant faces deportation as a result of conviction, counsel "should fully advise the defendant of these consequences."); *National Legal Aid and Defender Association Performance Guidelines for Criminal Defense Representation*, Guideline 6.2(a)(3) and commentary (1994) (recognizing that it is defense counsel's duty to "be fully aware of, and make sure that the client is fully aware of ... consequences of conviction such as deportation."). A criminal defense law treatise provides that:

> Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. Thus, the immigration consequences of a prosecution may totally alter the strategies chosen ... a[ny] attorney who suspects that this client is an alien has a duty to inquire and to protect his client's immigration status. Pleas and admissions must be approached with

caution and with knowledge of the consequences....

3 *Bender's Criminal Defense Techniques* (1999) § 60A.01 and § 60A.2[2]. Furthermore, lawful permanent residents are typically part of a resident alien community and are likely aware of what happens to other members of the community who engage in criminal conduct. *See Pottinger*, 51 F.Supp.2d at 363.

There is also little doubt that before the AEDPA and IIRIRA were enacted, an alien's reliance on the possibility of receiving a waiver of deportation was reasonable because there was a strong possibility that he or she would receive relief. *See Tasios*, 204 F.3d at 551 ("in the years immediately preceding the enactment of AEDPA, immigration judges and the BIA granted over half of the § 212(c) applications they decided"). When a request was denied, an alien could petition a court of appeals for review and, "on a nontrivial number of occasions," these denials were overturned. *See id.* at 551–52 (quoting *Reyes–Hernandez*, 89 F.3d at 492).

When, in March of 1996, St. Cyr pled guilty to his drug-trafficking offense, he and legal residents in his position were removable from the United States. He and others like him, however, could depend on the availability of a hearing to determine his eligibility for relief from removal. Given the dramatic impact removal would have on a legal resident's life, it is likely that a legal resident would, because of the possibility of receiving a lighter sentence, only decide to concede guilt to a crime that renders him or her removable in order to be eligible to apply for relief from removal. Under the law today, this settled expectation is upset dramatically. For certain classes of aliens, there is currently no reason to forgo fighting the conviction of a qualifying crime and enter a plea because, pursuant to the AEDPA and

---

7. In regard to this point, Amici include The Legal Aid Society of the City of New York, The New York State Association of Criminal Defense Lawyers, and the New York State Defenders Association. These briefs were submitted in *Calcano–Martinez v. INS*, 232 F.3d 328 (2d Cir.2000).

IIRIRA, there is no possibility of relief from removal as a result of the plea.

"[I]ndividuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483. Because there is sufficient evidence that a legal resident accused of a crime that renders him or her removable from this country would have conformed his or her conduct according to the availability of relief when he or she pled guilty, AEDPA § 440(d) and IIRIRA § 304 would severely upset settled expectations were it applied retroactively to pre-enactment guilty pleas. A repeal of the eligibility to apply for relief from removal would attach new legal consequences to a legal resident's guilty plea to a removal crime. Therefore, AEDPA § 440(d) and IIRIRA § 304 have an impermissible retroactive effect as applied to pre-enactment guilty pleas.

■ We are not persuaded that, as the INS argues, because the bar to relief can be described as a new jurisdictional rule—in that it gives the Attorney General jurisdiction to grant a waiver in her discretion—it automatically has no retroactive effect. It is true that a change in law that "speak[s] to the power of the court rather than to the rights or obligations of the parties" may be applied in a case without raising concerns that it is impermissibly retroactive. *Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483 (quoting *Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, *J.* concurring)). In *Hughes Aircraft,* however, the Supreme Court explained that a jurisdictional statute that does not "merely address[ ] *which* court shall have jurisdiction to entertain a particular cause of action" but, rather, affects "*whether* [a claim] may be brought at all" should not presumptively be given retroactive effect. 520 U.S. at 951, 117 S.Ct. 1871. AEDPA § 440(d) and IIRIRA § 304 do not merely change the degree of deference to be afforded a § 212(c) request or change the judicial or administra-

tive forum in which relief may be granted. Rather, they alter the substantive rights of aliens subject to removal proceedings because it eradicates a form of relief previously available. By their terms, AEDPA § 440(d) and IIRIRA § 304 attach new substantive legal consequences to a guilty or *nolo contendere* plea to a deportable crime and would have an impermissible retroactive effect if applied to pre-enactment pleas.

Our conclusion here is consistent with the law of this Circuit. In *Buitrago-Cuesta,* we considered a 1990 amendment to INA § 212(c) which precluded an alien who had "been convicted of an aggravated felony and has served a term of at least 5 years" from seeking a discretionary waiver from deportability. *See* 7 F.3d at 292. The petitioner in that case argued that because at the time of his conviction his crime was not defined as an "aggravated felony," the 1990 amendment should not apply to his deportation proceeding commenced prior to the amendment. *See id.* We decided that Congress intended that the 1990 amendment be applied retrospectively. *See id.* at 295. Since we decided *Buitrago-Cuesta,* however, the Supreme Court has decided *Landgraf, Hughes Aircraft,* and *Martin,* cases that honed retroactivity principles. *See id.* at 293 ("[at time of decision] [t]he Supreme Court's position on the retroactivity of civil statutes is somewhat unclear."). Moreover, the petitioner in *Buitrago-Cuesta* did not pled guilty to a deportable crime but instead was convicted after a jury trial in state court. *See id.* at 293. Therefore, our ruling today that the 1996 amendments insofar as they bar relief afforded prior to their enactment have a retroactive effect as applied to pre-enactment guilty pleas—a situation where an alien is likely to strategize according to the availability of discretionary relief—does not contradict our earlier ruling in *Buitrago-Cuesta.*

The INS's warning against "an absurd superprospective result" is also unfounded. We do not rule today that application of

the 1996 amendments to pre-enactment convictions has an impermissible retroactive effect. Rather, we hold that AEDPA § 440(d) and IIRIRA § 304 do not apply to pre-enactment guilty pleas or pleas of *nolo contendere* because such an application would upset reasonable, settled expectations and change the legal effect of prior conduct. Our ruling affects the narrow class of cases where an alien pled guilty to a criminal offense that qualifies as a removable crime. Discretionary relief as amended by AEDPA § 440(d) still applies to all aliens with convictions pre-dating its enactment and to all guilty pleas entered after its effective date. Likewise, cancellation of removal still applies to all aliens with convictions pre-dating IIRIRA and to all guilty pleas entered by aliens to deportable crimes after it took effect.

## CONCLUSION

In sum, we hold that the district court had habeas corpus jurisdiction under 28 U.S.C. § 2241 to review St. Cyr's challenge to the BIA's interpretation of AEDPA § 440(d) and IIRIRA § 304. On the merits, we hold that the bar on applying for relief enacted in AEDPA § 440(d) and IIRIRA § 304 does not apply to an alien who pled guilty or *nolo contendere* to an otherwise qualifying crime prior to IIRIRA's enactment date. Because we determine that these laws do not apply retroactively to St. Cyr, we do not decide his constitutional challenges. The district court is affirmed insofar as it held that the bar to discretionary relief from removal does not apply to guilty and *nolo contendere* pleas entered before IIRIRA's enactment.

---

1. The majority hints that removing 8 U.S.C. § 1182(c) (" § 212(c)") relief retroactively would raise "a profound constitutional question." *Supra* at 416 n. 6. I share no such concern. Congress's plenary power to define the conditions of aliens' continued residence in this country gives Congress the authority to remove § 212(c) relief, as advocated by the INS. I do not dispute the general presumption against the retroactive application of congres-

JOHN M. WALKER, JR., Circuit Judge, Dissenting:

Because I find Congress's intent plain on the face of the statute not to permit withholding of deportation or, in the parlance of the new law, cancellation of removal to aliens in appellee's position, I respectfully dissent.

There is no doubt that it is within Congress's power to redefine what will subject an alien to removal, *see Mathews v. Diaz,* 426 U.S. 67, 81, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), and that Congress may effect such changes to require removal of an alien who would not have been subject to removal of an alien who would not have been subject to removal before the changes became effective,[1] *see United States v. Koziel,* 954 F.2d 831, 834 (2d Cir.1992) (upholding retroactive repeal of Judicial Recommendations Against Deportation for certain criminal aliens); *Marcello v. Bonds,* 349 U.S. 302, 314, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) (permitting deportation based on conviction that would not have been a basis for deportation when the crime was committed). Indeed, there is a long tradition of Congress retroactively changing the qualifications for aliens' continued residence in the United States. *See, e.g., Harisiades v. Shaughnessy,* 342 U.S. 580, 593, 72 S.Ct. 512, 96 L.Ed. 586 (1952); *Mahler v. Eby,* 264 U.S. 32, 39, 44 S.Ct. 283, 68 L.Ed. 549 (1924); *Bugajewitz v. Adams,* 228 U.S. 585, 592, 33 S.Ct. 607, 57 L.Ed. 978 (1913). While there is little doubt that Congress may alter the requirements for continued residence in this country, identifying when Congress has chosen to exercise its power retroactively has proven a more difficult problem and it

sional enactments, especially where the rights of "an unpopular group or individual" are affected. *Id.* But this is not an issue of constitutional dimension. Accordingly, I share the view of the majority, as expressed in the body of its opinion, that our inquiry here is governed by retroactivity analysis and not by the canon of construction requiring us to avoid constitutional questions.

is here that my views diverge from those of my colleagues.

The majority's opinion has correctly identified the nature of the inquiry that we must undertake. *See supra* at 412 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). The threshold question in the *Landgraf* framework is whether Congress has expressly provided for a statute's retroactive application. If so, our inquiry is at an end. *See id.; Martin v. Hadix,* 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). The majority has found ambiguity in the temporal reach of Congress's repeal of § 212 (c) relief for criminal aliens. I disagree.

I believe that Congress's intent is clear on the face of the statute and that IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009–546 *et seq.* (1996), has removed the availability of § 212 (c), or equivalent relief, from criminal aliens like the petitioner here, regardless of when they entered their guilty pleas. This plain congressional intent is evident from IIRIRA's general statutory framework and its comprehensive method of implementation. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("The plainness or ambiguity of statutory language is to be determined by reference to the language itself, the specific context in which that language is used, *and the broader context of the statute as a whole.*" (emphasis added)).

IIRIRA § 309 fixed April 1, 1997 as IIRIRA's effective date. *See* 110 Stat. at 3009–625. While § 309 contains a general savings clause listing those aliens for whom IIRIRA does not apply as of its effective date, none of those exceptions are relevant here. *See* § 303(b)(2), 110 Stat. at 3009–586; § 242(g), 8 U.S.C. § 1252(g); § 306(c), 110 Stat. at 3009–612; §§ 308(d)(2)(D) & (d)(5), 110 Stat. at 3009–617, 619. Moreover, Congress, intending that IIRIRA be a complete break from the past, enacted transitional provisions that would operate during a phase-in period

ending on IIRIRA's effective date. *See Calcano–Martinez v. I.N.S.,* 232 F.3d 328 (describing IIRIRA's transitional rules). This legislative scheme of transitional provisions followed by permanent legislation can be reduced to one essential point relevant to IIRIRA's repeal of § 212(c): Congress intended the whole of IIRIRA's permanent provisions to apply to every alien as of April 1, 1997, except where it expressly exempted those provisions that were not meant to apply as of that date. The provision repealing § 212(c) was not one of them. Included in the provisions generally effective as of April 1, 1997 is § 304(b), repealing § 212(c), and § 304(a), replacing § 212(c) with new provisions entitled "Cancellation of Removal." *See* § 304, 110 Stat. at 3009–594–97. The new cancellation of removal proceedings exclude specified classes of criminal aliens, including the petitioner here, from seeking discretionary relief.

Congress could not have been more express about its intent to have IIRIRA apply to all aliens against whom deportation or removal proceedings were not yet pending as of April 1, 1997. *See generally* § 309. If, as petitioner necessarily concedes, it is IIRIRA and not the old INA that subjects him to removal, then it is IIRIRA's provisions that provide for the limits of judicial review and for cancellation of removal proceedings. I need look no farther to find that Congress made express its intention to disallow the relevant aliens against whom removal proceedings were filed after April 1, 1997 from seeking the protection of § 212(c) relief. Because petitioner falls generally within IIRIRA's provisions, he is subject to IIRIRA's "Cancellation of Removal" proceedings—from which, because of his criminal past, he is expressly excluded—and does not have access to § 212(c) relief.

The majority discounts this argument, suggesting that it is based on nothing more than the statute's effective date and

that such reasoning is impermissible because of the pronouncement in *Landgraf* that "[a] statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf,* 511 U.S. at 257, 114 S.Ct. 1483. But the Court's statement in *Landgraf* is inapplicable here. Changes to the Civil Rights Act of 1991, at issue in *Landgraf,* created new rights of employees "to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964," *id.* at 247, 114 S.Ct. 1483, and the Court had to decide only whether a Title VII plaintiff whose suit was on appeal when the 1991 Act was enacted should be retroactively entitled to the Act's punitive damages provisions. In that context, the fact that the 1991 Act was enacted on November 21, 1991 did not help the Court to decide whether it was intended to apply to claims predating the Act. But here, where the entirety of the new IIRIRA applies generally to the petitioner—indeed, if it did not, he would not be subject to removal at all—IIRIRA's complex provisions governing its effective dates are squarely relevant to determining the extent of IIRIRA's application as to him. In my view, these provisions plainly provide that petitioner is not entitled to § 212(c) relief.

The awkward statutory patchwork sewn together by the majority from scraps of IIRIRA and the former INA reveals that Congress could not have intended the majority's conclusion. The majority's opinion faces insurmountable hurdles even on a linguistic level. The petitioner here is subject to removal under the new IIRIRA. With this opinion, the majority has permitted petitioner access to a waiver of deportation hearing under § 212(c) that was part and parcel of a statutory scheme that no longer exists. Under IIRIRA, there is no such thing as deportation that can be waived. In order to reach the result they want, the majority has effectively taken a provision that they like from a statute that

has been substantially replaced, and grafted it onto the replacement.

Insofar as the *Landgraf* presumption against retroactivity is a canon of construction that permits us to divine the intent of Congress, I cannot concur in a conclusion that flies so indisputably in the face of Congress's express denial of cancellation of removal hearings for this alien. Combined with what I think are compelling expressions of Congress's actual intent to repeal § 212(c) retroactively as to the broader class of criminal aliens described in IIRIRA § 304, I respectfully dissent from my colleagues' view that § 304 may only be applied prospectively to pleas antedating IIRIRA's enactment.

Because Congress's intent is plain on the face of the statute, I see no reason to reach the second step of the *Landgraf* analysis which requires us to determine whether IIRIRA's provisions governing cancellation of removal have genuine retroactive effect. Nevertheless, if I were to reach *Landgraf's* second step, I would conclude that provisions denying cancellation of removal do not operate retroactively. I believe that analysis of this question should be governed by cases arising in the context of the substantially analogous 1990 amendment to the INA.

The 1990 amendment limited the relief afforded by § 212(c)'s waiver of deportation by excluding aggravated felons who were sentenced to terms of imprisonment of at least five years. In holding that the 1990 amendment did not have a retroactive effect, the Ninth Circuit persuasively held that "[c]ongressional repeal of a discretionary power to relieve an alien from deportation does not attach any new legal consequences to the pre-enactment events." *Samaniego–Meraz v. INS,* 53 F.3d 254, 256 (9th Cir.1995). As in the present case, "the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation." *Scheidemann v. INS,* 83 F.3d 1517, 1523 (3d Cir.1996). "In

general, the concern regarding retroactive application of statutes is the deprivation of rights without notice and fair warning; such concerns are not present in this case.... In this case, Congress did not attach additional consequences [to past criminal activity] but merely withdrew a previously available form of discretionary relief." *Id.* (quoting *De Osorio v. INS,* 10 F.3d 1034, 1042 (4th Cir.1993)) (alterations in original). True retroactivity would occur if IIRIRA revoked § 212(c) relief from those who had received it prior to IIRIRA's effective date. IIRIRA § 304(b), like the 1990 amendment, "is not made retroactive merely because it applies to convictions for aggravated felonies before that time. The past aggravated felony conviction is only the prerequisite for the prospective denial of discretionary relief." *De Osorio,* 10 F.3d at 1042.

As of IIRIRA's April 1, 1997 effective date, Congress plainly changed the category of aliens who thereafter may seek cancellation of removal, and I disagree that the new scheme has a genuinely retroactive effect. Accordingly, I would conclude that the *Landgraf* presumption against retroactivity has no effect on our analysis. In the absence of any such presumption against retroactivity, our more traditional tools of construction apply, including the usual deference afforded to agency interpretations under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, even were I to agree that the temporal reach of § 304(b) is ambiguous, I still believe that petitioner here would not be entitled to withholding of deportation or cancellation of removal proceedings.